UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CEDRIC GAY,

       Plaintiff,

v.                              CASE No. 8:10-CV-2524-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, the decision will be affirmed.

I.

       The plaintiff, who was thirty-six years old at the time of the administrative decision and who has an eighth or ninth grade education, has

_____

      [1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

worked as a CNA's aide, grocery/produce clerk, sales route driver, and heavy truck driver (Tr. 35, 47-48).  He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to knee problems (Tr. 192).  The claims were denied initially. The plaintiff sought reconsideration only of his supplemental security income application (because his alleged onset date was after his date last insured (see Doc. 22, p. 1 n.1)), and the request for reconsideration was denied.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "chronic knee and back pain" (Tr. 15). The law judge determined that, despite these impairments, the plaintiff could perform light work that involved routine tasks in an environment with limited contact with the public (Tr. 17). He concluded further that the work could be performed only with occasional bending, stooping, and crouching (id.). The law judge found that these limitations prevented the plaintiff from performing past relevant work (Tr. 23). However, based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform other work that exists in significant numbers in the national economy, such as small

products assembler, laundry sorter, and mailroom clerk (Tr. 24).  The law judge therefore decided that the plaintiff was not disabled (Tr. 25).  The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A.  In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales,

402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

  B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

  When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 416.920(g). In such cases, the regulations direct that an

individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.

III.

A.  The plaintiff contends, first, that the law judge failed to categorize his impairment of borderline intellectual functioning as a severe impairment (Doc. 20, p. 5).  Significantly, the law judge considered the plaintiff's borderline intelligence and gave a very lengthy and reasonable explanation why it was not severe (Tr. 15-16; see also Tr. 19-20, 21).  His explanation was not erroneous.

The regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 416.921(a). The plaintiff points out that the court of appeals has stated that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).  Notably, the law judge acknowledged this principle in his decision (Tr. 15). Regardless of the alternate formulation, the

standard set out in the regulations, and the one I will apply, is that a nonsevere impairment does not significantly limit a claimant's ability to do work activities. See Dixon v. Barnhart, 151 Fed. Appx. 810, 812 (11th Cir. 2005)(the claimant "did not have a severe impairment because he was not significantly limited by a physical or mental impairment").

Importantly, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized borderline intellectual functioning as a severe impairment. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

In order to demonstrate reversible error based upon a mischaracterization regarding borderline intellectual functioning, the plaintiff must show that he had functional limitations from the condition that were not included in the law judge's determination of the plaintiff's residual functional

capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(unpub. dec.)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

As indicated, the law judge has explained, at length, that, despite the plaintiff's borderline intellectual functioning, he does not have any limitations in the areas of activities of daily living and of social functioning and has only a mild limitation in the area of concentration, persistence, or pace (Tr. 15-16). Further, the law judge included in the residual functional capacity a limitation to performing routine tasks in an environment with limited contact with the public (Tr. 17). Also, the vocational expert and the law judge limited the plaintiff to only unskilled jobs (Tr. 24). In order to demonstrate reversible error, the plaintiff would have to show that his mental impairment created functional limitations that were greater than these

restrictions. The law judge's determination that there was no such showing is supported by substantial evidence.

The plaintiff asserts, based on the opinion of consultative examining psychologist, Dr. Fred L. Alberts, Jr., that he has an extreme limitation in the ability to make judgments on complex work-related decisions, marked limitations in the ability to understand, remember, and carry out complex instructions, marked limitations in the ability to respond appropriately to usual work situations and to changes in routine work setting, and a moderate limitation in the areas of interacting appropriately with supervisors, coworkers, and the public (Doc. 20, p. 7). This opinion stems from a one-time examination Dr. Alberts conducted of the plaintiff on October 7, 2009. Dr. Alberts diagnosed the plaintiff with a mood disorder and borderline intellectual functioning based on the Wechsler Adult Intelligence Scale-IV, a clinical interview, and behavioral observation (Tr. 299, 302). In addition to his assessment of the foregoing moderate, marked, and extreme restrictions (Tr. 303-04), Dr. Alberts opined that the plaintiff had no restrictions in understanding and remembering simple instructions, mild

restrictions in carrying out simple instructions and in making simple work-related decisions (Tr. 303).

Importantly, Dr. Alberts's report contained caveats questioning the validity of the assessment of borderline intellectual functioning. Accordingly, the law judge discounted that assessment and he explained why in depth. Thus, the law judge gave some weight to this psychologist's opinion "because he is a mental health specialist and personally examined the claimant" (Tr. 21). However, the law judge explained that he was skeptical of the limitations set forth by the consultative psychologist (id.):

> Dr. Alberts [sic] opinion is not give [sic] greater weight because he reported that the claimant's "mood and effort may have affected the overall findings." Dr. Alberts pointed out the claimant's test scores must be considered only a "minimal estimate" of the claimant's true intellectual capability. Dr. Alberts even qualified his diagnosis of borderline intellectual functioning with the phrase "the best estimate of his current intellectual functioning." Dr. Alberts' own statements cast doubt upon the accuracy of his findings. Therefore, the undersigned finds that Dr. Alberts' opinion is not entitled to greater weight.

The law judge also thought that Dr. Alberts's report indicates that the plaintiff intentionally exaggerated his impairments during the examination (Tr. 20). In this respect, the law judge stated (Tr. 16):

> However, Dr. Alberts concluded that the claimant's scores "must be considered a minimal estimate of his intellectual capability." Dr. Alberts further opined that claimant's scores as a minor were not consistent with his test scores as an adult and implied that a "significant head trauma" would be the only way to describe the decline in the claimant's cognitive performance. The claimant specifically denied any head trauma. The undersigned notes that the claimant testified he "did his best" on this IQ test but did not find his testimony persuasive on this issue.

Consequently, the law judge's finding is reasonable and supported by substantial evidence, so that it is not subject to being overturned.

Contrary to the plaintiff's contention, his school records do not support the limitations set forth in Dr. Alberts's Medical Source Statement. In fact, as the law judge points out, Dr. Alberts opined that the plaintiff's school records were inconsistent with his low adult I.Q. score absent a "significant head trauma" (Tr. 20). Specifically, Dr. Alberts stated that the I.Q. test results "are clearly not consistent with school history in the SLD

program. His percentile rank, with regard to academic achievement in the early years, far exceeds that of an individual that would produce these minimal scores as an adult" (Tr. 302).

Moreover, as further support for his conclusion that borderline intelligence was not a severe impairment, the law judge discussed the claimant's past work as follows (Tr. 20):

> [T]he vocational expert testified that the claimant's past relevant work was semi-skilled suggesting that the claimant is not mildly mentally retarded as alleged. The claimant's initial disability paperwork indicated that the claimant's work required the use of technical knowledge and skills and required the ability to write and complete reports. (Ex. 6E) [see Tr. 213, 215, 216, 217, 218] The claimant also took and passed his commercial driver's license exam, although he testified that he had to take the exam multiple times.

The law judge also commented that the plaintiff did not allege any reduced cognitive ability in his initial disability application and that failure "does not strengthen the credibility of his allegations" (Tr. 21).

In sum, the law judge fully explained his findings that the plaintiff's mental condition does not amount to a severe impairment. Those findings are reasonable and supported by substantial evidence. The plaintiff

has not shown that the evidence compels the conclusion that the plaintiff's mental impairment was severe as that term is used in the Social Security regulations. <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.

Furthermore, even if the law judge mischaracterized the plaintiff's mental condition as a nonsevere impairment, that error would not warrant reversal. Thus, in order to show reversible error, the plaintiff would have to show that the evidence compelled functional limitations beyond those set forth in his residual functional capacity. The plaintiff has not made any such showing.

B. The plaintiff also challenges the law judge's decision to assign only "some weight" to the opinion of examining physician Dr. Todd Rosenthal, while giving "great weight" to the opinion of a nonexamining physician, Dr. Ronald Kline (Doc. 20, p. 10). This contention lacks merit.

After seeing the plaintiff once on October 13, 2009, examining internist Dr. Rosenthal diagnosed the plaintiff with depression, seizures, osteoarthritis of the knees, lumbar pain, and asthma (Tr. 309). Dr. Rosenthal found that the plaintiff's chest was clear to auscultation and percussion, that his upper extremities, hand grasp, and cervical spine were within normal

-13-

limits, and that the plaintiff was ambulatory albeit with a very slow and antalgic gait (Tr. 308-09). Dr. Rosenthal determined that the plaintiff can open a door and button a button, but that he had minimal knee movement and pain on squatting (Tr. 309). Despite these findings and the plaintiff's indication that he can do light housework, Dr. Rosenthal filled out a Medical Source Statement finding that the plaintiff was essentially incapacitated. Thus, Dr. Rosenthal opined that the plaintiff could not even lift or carry ten pounds, that he can only sit, stand, and walk for ten minutes at a time, and sit, stand, and walk for a total of thirty minutes each in an eight-hour workday (Tr. 312-13). Among other things, Dr. Rosenthal found that the plaintiff could never push or pull and that he could only occasionally reach (Tr. 314).

The law judge appropriately evaluated the opinion from Dr. Rosenthal and provided adequate reasons for only giving his opinion some weight. Thus, the law judge stated (Tr. 22):

> [C]ontrolling weight is unwarranted because Dr. Rosenthal's opinion contains inconsistencies, is contradicted by the claimant's own report of his symptoms, and does not contain sufficient explanations to support his findings. First, Dr. Rosenthal found that the claimant could shop and perform light house work. However, Dr. Rosenthal

-14-

also found that the claimant could never lift or carry...more than ten pounds, could stand and/or sit for no more than ten minutes without interruption, and could stand and/or sit for no more than thirty minutes in an eight hour day. These two findings appear to be mutually exclusive. Additionally, Dr. Rosenthal opined that the claimant "could climb a few steps at a reasonable pace with the use of a hand rail" but he simultaneously reported that the claimant could never climb stairs.

Dr. Rosenthal's conclusions do not appear to be supported by objective findings. For example, Dr. Rosenthal concluded that the claimant had seizures although the claimant reported that he had no seizures since childhood and takes no medications for seizures.   Dr. Rosenthal reported no abnormalities in the claimant's motor system or neurological system. Dr. Rosenthal concluded that the claimant had asthma based solely on the claimant's shortness of breath.   The claimant reported that he had had no problems with asthma since childhood and did not wheeze. Dr. Rosenthal found that the claimant's chest was clear to auscultation and percussion and there was no wheezing or rhonchi.

Dr. Rosenthal's justifications for his conclusions concerning the claimant's abilities consist of only a few words. For example, Dr. Rosenthal opined the claimant was limited in the use of his hands, use of his feet, and postural activities. Although he was asked to identify particular medical or clinical findings to support his assessment, Dr. Rosenthal only wrote "lumbar pain." Dr. Rosenthal reported

that the claimant had environmental limitations based on his "depression." In addition to being a vague justification, Dr. Rosenthal has no credentials as a mental health specialist.

The undersigned also notes that Dr. Rosenthal's report lists depression twice in the clinical conclusions section, presumably in error. This error suggests that Dr. Rosenthal's report is not the product of careful work.

This reasoning demonstrates that Dr. Rosenthal's extravagant opinion is conclusory, internally inconsistent, and unsupported by objective findings. These are appropriate reasons for discounting the opinion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Frankly, Dr. Rosenthal's restrictions are so excessive they virtually fall of their own weight.

Significantly, Dr. Rosenthal is not a treating physician, although the plaintiff seeks to cloak him with the weight afforded such a physician. Moreover, Dr. Rosenthal, an internist, does not specialize in orthopedics, which is the type of condition found by the law judge to be the plaintiff's severe impairments.

The discounting of Dr. Rosenthal's opinion is also supported by the lack of any medical evidence showing the limitations he set forth. As the

law judge noted, "[t]he medical evidence of record is extremely sparse" (Tr. 18).  The law judge added that "the claimant has received surprisingly little medical care for his allegedly debilitating impairments" (Tr. 20).  Moreover, he takes only over-the-counter pain medications (id.).

In addition, Dr. Rosenthal's opinion may have been influenced by the plaintiff's exaggerated behavior.  Thus, Dr. Rosenthal noted on October 13, 2009, that the plaintiff walked with a very slow and antalgic gait (Tr. 309).  However, Dr. Alberts reported on October 7, 2009, that the plaintiff's gait was normal (Tr. 301).  In other words, the plaintiff limped in the doctor's office when he went for a physical examination, but a week earlier he walked normally when he appeared for a psychological evaluation.

The plaintiff argues further that the law judge improperly relied upon the opinion of a nonexamining, reviewing physician (Doc. 20, p. 10).  "The opinions of nonexamining, reviewing physicians, ... when contrary to those of the examining physicians, are entitled to little weight." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).  In this instance, the law judge appropriately discounted Dr. Rosenthal's opinion.  Furthermore, he said he accorded the opinion of Dr. Ronald Kline, a state agency medical consultant,

-17-

great weight because Dr. Kline had reviewed all of the sparse medical evidence of record and is familiar with Social Security regulations (Tr. 22). Notably, the law judge was required by a Social Security directive to consider that opinion and explain in his decision the weight given to it. Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A.).

In all events, the law judge did not base his decision upon Dr. Kline's opinion, or default to it, as the plaintiff asserts. The law judge's own independent assessment led to a different conclusion, despite the weight given Dr. Kline's opinion. Thus, Dr. Kline opined that the plaintiff was able to perform a full range of medium work with no other limitations. The law judge, on the other hand, found that the plaintiff was limited to light work with additional limitations (Tr. 17). The law judge, obviously, made his own determination of the plaintiff's residual functional capacity. That determination, which included the discounting of Dr. Rosenthal's opinion, is reasonable, adequately explained, supported by substantial evidence, and consistent with the governing law.[2]

---

[2]It is noteworthy that, prompted by the law judge's reference to a federal conviction, I discovered that the plaintiff had been convicted in this court on February 24, 2003, of felon in possession of firearms and distribution of crack cocaine (United States v. Gay,

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this ___28th___ day of October, 2011.

_____

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

---

Case No. 8:02-CR-366-T-27MSS). The judgment of conviction included an Order that the defendant was ineligible for all federal benefits for a period of five years (id., Doc. 29. p. 7). The defendant was subsequently returned to prison for eighteen months, on April 29, 2008, for violating supervised release, and during the period of incarceration the plaintiff could not receive supplemental security income. 42 U.S.C. 1382(e)(1)(A); 20 C.F.R. 416.211(a).

My review of the criminal case also confirmed that the plaintiff is not entitled to relief on his contentions, although that review did not enter into my resolution of the contentions. Thus, the plaintiff wrote letters to the court that belie his claim of borderline intellectual functioning (Case No. 8:02-CR-366-T-27MSS, Docs. 34, 70. 75, 79. 89). Further. the petition alleging supervised release violations stated that the plaintiff over several days in March 2008 beat his girlfriend, thereby engaging in activities that contradict his claim of disabling impairments (Doc. 41; see also Doc. 81).